**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **CLOPAY CORPORATION,** | * | **Case No. 1:26-cv-868** |
| | * | |
| Plaintiff, | * | **Judge Matthew R. Byrne** |
| | * | |
| v. | * | |
| | * | |
| **OVERHEAD DOOR CORPORATION** | * | |
| | * | |
| | * | |
| Defendant. | * | |

---

**Opinion and Order Denying Defendant Overhead Door Corporation's Emergency Motion to Moot or, Alternatively, Vacate or Adjourn the Preliminary Injunction Hearing**

---

This matter is before the Court on Defendant Overhead Door Corporation's Emergency Motion to Moot or, Alternatively, Vacate or Adjourn the Preliminary Injunction Hearing. (Doc. 32, 36.) For the reasons explained below, the Motion (Doc. 32, 36) is **DENIED**.

## I. Background

This is a dispute in which Plaintiff Clopay Corporation brings false advertising, deceptive trade practices, and unfair competition claims against Defendant Overhead Door Corporation. (Doc. 1.) Clopay and Overhead Door are both commercial and residential garage door manufacturing entities. (*Id.* at ¶ 11-12.) In its complaint, Clopay alleges Overhead Door published false and misleading thermal performance indicators for certain of Overhead Door's aluminum garage doors. (*Id.* at ¶ 22-56.)

According to the Complaint, thermal performance is the key competitive metric in the commercial garage door industry. (Complaint, Doc. 1, ¶ 22.) One way to measure the

thermal performance of a garage door is through a thermal performance rating known as the "U-Factor." (*Id.* at ¶ 23.) The Complaint asserts that the industry standard U-Factor rating for full-view glass sectional garage doors ranges from .73 to .86 or higher. (*Id.* at ¶ 25.) According to Clopay, "[u]nder basic laws of physics and heat transfer, it is impossible for an aluminum thermally unbroken sectional garage door with full glazing to achieve a whole-door U-Factor of 0.30 or lower." (*Id.* at ¶ 25.) Nevertheless, Overhead Door has allegedly advertised that certain of its full-view sectional garage doors achieve U-Factor ratings of .28 and .30. (*Id.* at ¶ 27-28.) Clopay contends Overhead Door knowingly advertised this false data, and in doing so, harmed the competitive marketplace and deceived commercial consumers. (*Id.* at ¶ 56.)

Shortly after filing its complaint, Clopay filed a motion for preliminary injunction. (Doc. 11.) Clopay seeks a preliminary injunction against Overhead Door (1) enjoining Overhead Door from publishing, advertising, distributing, or disseminating any marketing materials representing that any of its full-view sectional aluminum overhead doors obtain a specific U-Factor Rating; (2) enjoining Overhead Door from representing to any professional that solid door tests can be applied to full-view sectional doors; and (3) requiring Overhead Door to issue certain corrective advertising and to disseminate that corrective advertising in specific ways. (*Id.* at PageID 107-108.)

The preliminary injunction motion is based on Clopay's claims that Overhead Door has falsely advertised the thermal performance of certain of its garage doors and that because Overhead Door did so, Clopay is suffering and will suffer irreparable harm. (*Id.* at PageID 83.) However, underlying Clopay's preliminary injunction motion is the fact that Clopay is preparing to release a new commercial garage door that performs in the manner Overhead Door asserts its door currently does. (*Id.*at PageID 89.) According to

Clopay, "the Model 907 Door is a commercial full-view sectional aluminum door that is more thermally efficient than any other full-view sectional aluminum door in Clopay's product offerings or any other full-view sectional aluminum door on the market from any major manufacturer." (*Id.*) Thus, Clopay contends it will suffer irreparable harm because (1) it will not be able to effectively compete in the marketplace as Overhead Door's actions have set artificially low technical specifications;(2) Clopay's new high-performance commercial garage door will not be able to compete with Overhead Door's allegedly falsely advertised commercial garage doors; and (3) Clopay "is losing and will continue to lose the opportunity to market its Model 907 Door as an innovative new product that performs better than any other product on the market in its product category in terms of thermal performance." (*Id.* at PageID 90-91.)

On October 26, 2026, Overhead Door filed a Motion to Moot or Adjourn or Alternatively Vacate the Preliminary Injunction Hearing (the "Motion to Moot"). (Doc. 32, 36.) According to Overhead Door's motion, a preliminary injunction hearing is no longer necessary because Overhead Door has published new U-Factor ratings and communicated these ratings to the public. (Doc. 36 at PageID 716.) Thus, Overhead Door contends it has already provided Clopay the relief it requests and so a preliminary injunction hearing is no longer necessary. (*Id.* at 717.)

## II. Analysis

### A. Clopay's preliminary injunction motion is not moot.

According to Overhead Door, Clopay's preliminary injunction motion no longer presents a live controversy because Overhead Door published new U-Factor ratings. (Doc. 32 at PageID 722.) Overhead Door does not contend that the underlying controversy is moot, but rather that Clopay's request for specific interim relief is moot because it no

longer provides an effectual remedy. (*Id.* at PageID 722-723). Overhead Door claims that "Clopay premised its [preliminary injunction motion] on the assertion that [Overhead Door] was continuing to publish allegedly inaccurate U-factor ratings, and that immediate judicial intervention was necessary to compel [Overhead Door] to obtain, publish, and communicate new ratings while the parties proceeded to litigate the merits of the case." (*Id.* at PageID 723.) Thus, Overhead Door argues, because Overhead Door has obtained new verified U-Factor ratings and sent those ratings to over 10,000 recipients, it has given Clopay the relief it seeks. (*Id.* at 723-24.) And so, according to Overhead Door, Clopay is "free to introduce its Model 907 door without the issue of the allegedly inaccurate [Overhead Door] ratings.") (*Id.* at PageID 724).

"[U]nder Article III, the 'federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.'" *Ohio v. EPA*, 969 F.3d 308 (6th Cir. 2020), quoting *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974). "Thus, when a case at first presents a question concretely affecting the rights of the parties, but—as a result of events during the pendency of the litigation—the court's decision would lack any practical effect, the case is moot." *Id.* Moreover, Sixth Circuit caselaw distinguishes "'between mootness as to a preliminary injunction appeal and mootness as to the case as a whole.'" *Brown v. Yost*, 122 F.4th 597, 601 (6th Cir. 2024) (en banc) (per curiam) (quoting reference omitted). Because the mootness inquiry focuses on the request for relief, it is entirely possible that a request for preliminary relief may become moot while the request for relief that underlies the whole case remains live. *Id.* Thus, when assessing whether a claim for preliminary relief is moot, courts should ask whether it is possible for the court to grant "effectual relief" to the party seeking relief at this stage of the litigation. *Id.* at 602.

Clopay's request for preliminary relief is not moot. Overhead Door's core argument is that it already provided the requested relief to Clopay so the preliminary injunction is moot. If the only preliminary relief Clopay was seeking was Overhead Door's retraction of its allegedly false and misleading data and publication of corrective data in its place, then Overhead Door would be correct. But this is not all Clopay seeks. Clopay also seeks to enjoin Overhead Door from continuing to make certain representations to the public and professionals and it seeks specific, broadly-disseminated corrective advertising. (Doc. 42 at PageID 1908.) Clopay seeks this additional relief because it believes it will not be able to compete effectively in the marketplace unless Overhead Door corrects customers' perceptions about the accuracy of Overhead Door's current products. (*Id.* at PageID 1909). Regardless of whether Clopay is ultimately entitled to this relief, it is clear from its preliminary injunction motion and its opposition to Overhead Door's Motion to Moot that it is seeking relief beyond Overhead Door's replacement of old U-Factor data with new U-Factor data. Despite Overhead Door's recent actions, it is still possible for this Court to grant Clopay "effectual relief." *Brown*, 122 F.4th 597, 602. Therefore, there remains a live controversy and Clopay's preliminary injunction motion is not moot.

Moreover, "a defendant's voluntary cessation of a practice . . . typically does not deprive a federal court of its power to determine the legality of the practice." *Ohio v. EPA*, 969 F.3d at 308, quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000) (cleaned up). "Instead, a defendant's voluntary cessation moots a case only if, considering the circumstances as a whole, there clearly is 'no reasonable expectation that the alleged violation will recur.'" *Id.*, citing *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 767–68 (6th Cir. 2019) (cleaned up). Overhead Door argues that it has taken additional substantial steps beyond merely ceasing publishing the thermal

performance data at issue and so the motion for preliminary injunction is moot. (Doc. 36 at PageID 724; Doc. 45 at PageID 1943-1946.) But even so, "without the issuance of a Court-ordered injunction," Clopay "would have no assurance other than [Overhead Door's] word" that it will not again engage in the conduct Clopay seeks to prevent. *Kopp Dev., Inc. v. Metrasens, Inc.*, 2024 WL 4826381, at *25 (N.D. Ohio Nov. 19, 2024). Absent this Court's consideration, Clopay would also have no opportunity for assurance that Overhead Door will take the corrective measures it seeks or refrain from engaging in the communication Clopay seeks to prevent. (Doc. 42 at PageID 1908.). Overhead Door has not given this Court or Clopay any reasonable expectation that it will engage in the specific corrective advertising sought or that it will refrain from engaging in certain communications about this data in the manner Clopay seeks. Therefore, Overhead Door's voluntary decision to retract and republish new U-Factor data is not sufficient to moot Clopay's preliminary injunction motion.

For these reasons, this Court declines to dismiss Clopay's preliminary injunction motion as moot.

**B. The Court will not vacate or adjourn the preliminary injunction hearing.**

Overhead Door alternatively argues that the preliminary injunction hearing should be vacated or adjourned and held later because the "circumstances that purportedly justified emergency intervention no longer exist." (Doc. 36 at 725.) Overhead Door argues that the expedited discovery schedule and evidentiary hearing in this case were predicated on Clopay's assertion that Overhead Door was continuing to publish inaccurate data that was harming and would continue to harm Clopay as it launched its new commercial garage door. (*Id.*) Overhead Door argues that because Overhead Door has now stopped publishing the ratings in dispute and published new ratings, Clopay can no longer claim

irreparable harm, and a preliminary injunction hearing is not necessary. (*Id.* at 726). Overhead Door also argues that because circumstances have "changed significantly" since Clopay filed its motion for preliminary relief, "the schedule itself has become massively, and unfairly, compressed and burdensome." (*Id.* at PageID 730).

As discussed above, however, Clopay seeks relief beyond Overhead Door's retraction and replacement of U-Factor data. (Doc. 42 at PageID 1912). The purpose of the preliminary injunction hearing is for the parties to present evidence about *all* claims for preliminary relief Clopay seeks—not simply the relief Overhead Door believes is most important to Clopay. At this stage of the litigation, the parties have fully briefed the preliminary injunction motion, provided additional briefing with respect to the Motion to Moot, and have sought and briefed additional relief from this Court through the filing of other motions. (*See* Docs. 11, 16, 32, 36, 49). The parties have had ample opportunity to apprise the Court of any changes to the litigation landscape in this case and the Court trusts that the parties will be able effectively present their arguments at the preliminary injunction hearing. Vacating or further delaying the preliminary injunction hearing is not a good use of this Court's time or resources. Overhead Door's request that this Court vacate or adjourn the preliminary injunction hearing is denied.

## III. Conclusion

For the reasons set forth above, Overhead Door Corporation's Emergency Motion to Moot or, Alternatively, Vacate of Adjourn the Preliminary Injunction Hearing is **DENIED**.

IT IS SO ORDERED.

Date: November 17, 2026

Matthew R. Byrne
United States District Judge